UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X

CHRISTIANS OF CALIFORNIA, INC.,

                       Plaintiff,

            -v-

CLIVE CHRISTIAN NEW YORK, LLP, CLIVE
CHRISTIAN FURNITURE, LTD., and CLIVE
CHRISTIAN,

                       Defendants.

------------------------------------------------------------------ X

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED: February 3, 2015

13-cv-275 (KBF)

OPINION & ORDER

KATHERINE B. FORREST, District Judge:

      Defendant Clive Christian New York, LLP, defendant Clive Christian, and defendant-counterclaimant Clive Christian Furniture Ltd. (collectively, "defendants") have moved for summary judgment with respect to plaintiff Christians of California, Inc.'s fourth claim for fraud/misrepresentation and sixth claim for civil conspiracy. (ECF No. 233.) Plaintiff has also moved to strike arguments raised by defendants in their reply brief. (ECF No. 250.) For the reasons that follow, plaintiff's motion to strike is DENIED and defendants' motion for summary judgment is GRANTED.

I.     BACKGROUND

A.     Factual Background[1]

Plaintiff Christians of California, Inc. ("COC") is a Colorado corporation with its headquarters in Colorado.  (ECF No. 167 ¶ 6.)  Defendant Clive Christian ("Mr. Christian") is Chairman of Clive Christian plc, and he owns 49,999 of its 50,000 shares.  (DSOF ¶¶ 19-20.)  Defendant Clive Christian Furniture Ltd. ("CCF") is wholly owned by Clive Christian plc.  (DSOF ¶ 21.)  CCF manufactures cabinetry and fitted furniture.  (DSOF ¶ 1.)  Defendant Clive Christian New York, LLP ("CCNY") is a limited liability partnership, which at the time of the events at issue in this case was 99.5% owned by Clive Christian plc and 0.5% owned by Mr. Christian.  (DSOF ¶ 22.)

In December 1998, COC and CCF entered into an agreement (the "Dealership Agreement") pursuant to which CCF granted COC the right to open a Clive Christian–brand dealership in the Los Angeles area.  (DSOF ¶ 1.)  COC alleges that the Dealership Agreement contains a provision granting COC exclusive rights to

---

[1] The following facts are taken from the Local Rule 56.1 statements submitted by the parties in connection with this motion for summary judgment and their supporting materials.  (ECF Nos. 235 ("DSOF"), 246 ("PRSOF").)  The Court cites to the parties' factual submissions only when they support a factual proposition, cite relevant material, and are not contradicted in pertinent part by a counter-statement supported by citation to evidence that would be admissible.  See Local Civil Rule 56.1(d); Chimarev v. TD Waterhouse Investor Servs., Inc., 280 F. Supp. 2d 208, 223 (S.D.N.Y. 2003) (material facts set forth in a Rule 56.1 statement "are uncontested and may be accepted as true" where a Rule 56.1 counter-statement was "deficient" because it consisted solely of "blanket denials" and was "not supported by citation to any evidence"), aff'd, 99 Fed. App'x 259 (2d Cir. 2004).  The Court disregards factual allegations that are supported only by citation to plaintiff's complaint (e.g., PRSOF ¶ 17 & n.39), as the allegations in the complaint do not constitute evidence that would be admissible.  Further, to the extent COC's responses fail to directly address straightforward factual allegations by defendants, these failures are considered admissions as a matter of law.  See Local Civil Rule 56.1(c); Gubitosi v. Kapica, 154 F.3d 30, 31 n.1 (2d Cir. 1998); NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd., 262 F.Supp.2d 134, 139 (S.D.N.Y. 2003).

California.  Whether that contract is exclusive or not is irrelevant to the outcome of this motion.

In addition to the parties, the relevant participants in the events at issue include: architect Frank Durgin (PRSOF ¶ 3); Julie Lloyd, a former COC employee[2] who in 2011 was operating as an independent agent selling Clive Christian furniture in San Francisco[3] (PRSOF ¶ 3); Lori McCuaig, the owner of LMC Design Group (DSOF ¶ 2); and Jackie Weeman, the managing director of defendant CCNY (PRSOF ¶¶ 3, 5).

The dispute between the parties relates to the following series of events:  In late 2010, McCuaig was working as the agent for the Zaragoza family on a home remodeling project (the "Zaragoza Project"), and she contacted COC's Clive Christian Beverly Hills dealership regarding a potential sale of cabinetry and fitted furniture for that project.  (DSOF ¶ 2.)  Over the course of the year that followed, McCuaig had discussions with COC regarding this potential sale.  (See DSOF ¶ 3.) Architect Frank Durgin was hired by COC to oversee the installation of the Zaragoza Project.  (See PRSOF ¶ 3.)  Ultimately, on December 20 or 21, 2011, McCuaig decided not to purchase cabinetry and fitted furniture from COC.  (PRSOF ¶ 3.)  On December 20 or 21, 2011, McCuaig contacted defendant CCNY to discuss a potential sale of cabinetry and fitted furniture for the Zaragoza Project.  (DSOF ¶ 4; see PRSOF ¶ 3.)  This was the first time she had spoken with CCNY, its managing

---

[2] It is unclear from the parties' Rule 56.1 statements precisely when Lloyd left COC.

[3] Although this allegation in plaintiff's Rule 56.1 statement is not supported by citation to evidence that would be admissible, it is clear from the parties' briefing that the point is undisputed.

director Weeman, or any of the defendants.[4]  (DSOF ¶¶ 3-4.)  Durgin was brought

on to work on the Zaragoza project after the sale was transferred to CCNY.  (See

PRSOF ¶ 3.)

Around the time that McCuaig decided not to purchase cabinetry and fitted

furniture from COC, there were various communications among Mr. Christian,

Durgin, Lloyd, McCuaig, and Weeman.  Around the end of November 2011, Lloyd

and McCuaig had a phone conversation during which McCuiag expressed some

concerns about the Zaragoza Project, and after which Lloyd may have given her

Weeman's phone number.  (PRSOF ¶ 3 & nn.21-22, 24.)  In late November or early

December 2011, Lloyd and Mr. Christian spoke about the Zaragoza Project.

(PRSOF ¶ 3 & nn.25-26.)  On December 13, 2011, Lloyd and Durgin spoke on the

phone, and on December 14, 2011, Weeman sent Lloyd a text message.  (PRSOF ¶

3.)  After December 21, 2011, there were also a number of communications among

Mr. Christian, McCuaig, Weeman, Lloyd, and Durgin.  (See PRSOF ¶ 3.)

B.    Procedural Background[5]

COC filed this action seeking recovery for damages for the alleged loss of the

Zaragoza Project on February 10, 2012 in the District of Colorado.  (ECF No. 1.)  On

January 11, 2013, the District of Colorado transferred the action to this District,

---

[4] Although COC disputes the fact that this was the first time McCuaig spoke with CCNY, its
employee Weeman, or any of the defendants, the evidence that COC cites as support is: (1) that
Durgin (who is not a defendant in this action) had previously sent his contact information to
McCuaig (also not a defendant) by email; (2) a phone call between Durgin and Julie Lloyd, who at
the time was an independent agent selling Clive Christian furniture, on December 13, 2011; and (3)
a text message from CCNY's Weeman to Lloyd on December 14, 2011.  (See PRSOF ¶ 3.)  None of
these communications are between McCuaig and CCNY, Weeman, or any other defendant, and
accordingly this evidence is insufficient to create a triable issue as to this point.

[5] The Court recounts only the procedural history relevant to the disposition of the instant motions.

where it was initially assigned to the Honorable Laura Taylor Swain.  The case was later reassigned to the undersigned.  (ECF No. 136.)

On February 11, 2013, defendants answered and counterclaimed for damages stemming from COC's alleged violations of the Dealership Agreement.  (ECF No. 53.)  COC filed an amended complaint (the "Second Amended Complaint") on July 18, 2014.  (ECF No. 167 ("SAC").)

The Second Amended Complaint asserts eight claims for relief.  COC's fourth claim is for fraud/misrepresentation and is premised on defendants' alleged intent to breach the Dealership Agreement from the outset.  (SAC ¶¶ 73-78.)  The fraud/misrepresentation claim does not allege a breach of duty by CCF, Mr. Christian, or CCNY separate from any duty CCF had under the Dealership Agreement, and it seeks the same damages as COC's second claim, which is for breach of contract.  (See SAC ¶¶ 63, 73-78.)  COC's sixth claim is for civil conspiracy, and alleges that Mr. Christian, CCF, and CCNY agreed and conspired to tortiously interfere with COC's prospective business relations by marketing CCNY to LMC Design Group and/or the owners of the Zaragoza Project and seeking to enter into a contract with them.  (SAC ¶¶ 86-89.)

On August 1, 2014, defendants moved for summary judgment regarding COC's eighth claim, which is for copyright infringement.  (ECF No. 175.)  That motion was granted on September 15, 2014.  (ECF No. 223.)

On September 5, 2014, defendants wrote a letter to the Court indicating that COC agreed to merge its claim for breach of the implied covenant of good faith and

fair dealing with its breach of contract claim, and requesting that plaintiff's fraud/misrepresentation and civil conspiracy claims be "dismissed from the action."[6] (ECF No. 197.)  COC submitted a letter on September 12, 2014 confirming its agreement to merge its claims for breach of the implied covenant of good faith and fair dealing with its breach of contract claim, but opposing dismissal of the fraud/misrepresentation and civil conspiracy claims.  (ECF No. 221.)  Defendants moved for summary judgment[7] on these claims on October 6, 2014.  (ECF No. 233.) On November 13, 2014, COC moved to strike certain arguments made by defendants in their reply brief.  (ECF No. 250.)  This Opinion & Order resolves both pending motions.

## II.    MOTION TO STRIKE

All of the arguments COC seeks to strike were made either in response to arguments raised in COC's opposition brief, or otherwise to amplify arguments previously raised by defendants, both of which are permissible.  See Bayway Ref. Co. v. Oxygenated Mktg. & Trading A.G., 215 F.3d 219, 226-27 (2d Cir. 2000) ("[R]eply papers may properly address new material issues raised in the opposition papers so as to avoid giving unfair advantage to the answering party."); Toure v.

---

[6] Earlier, during a telephonic conference on July 29, 2014, the Court had requested that COC evaluate whether its claims for breach of the implied covenant of good faith and fair dealing, fraud/misrepresentation, and civil conspiracy were redundant of its other claims, and asked the parties to submit letters on this subject.  (ECF No. 216.)

[7] Several of defendants' arguments are styled as requests for dismissal, and not summary judgment—but given that defendants' motion is styled as a motion for summary judgment (see ECF No. 233) and the parties have amply briefed all issues, the Court evaluates them under Rule 56.

COC objects to defendants' motion on the basisg that defendants should have filed it prior to the dispositive motions deadline, and that the Court erred in permitting defendants to file this motion. This arguments lacks merit.  The Court invited the instant motion for summary judgment.

Cent. Parking Sys. of N.Y., No. 05 Civ. 5237(WHP), 2007 WL 2872455, at *2
(S.D.N.Y. Sept. 28, 2007) (a reply brief may "amplify points already made on the
initial motion").  Accordingly, the Court DENIES COC's motion to strike in its
entirety.

III.   MOTION FOR SUMMARY JUDGMENT

    A.   Choice of Law

    COC contends that California law should apply to its claims, while
defendants argue that this Court should apply New York law.[8]  While there are
differences in the relevant laws of New York and California, such differences are
not ultimately determinative of the outcome of this dispute.

    "Federal courts sitting in diversity look to the choice-of-law rules of the
forum state." Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Co., 363 F.3d 137, 143 (2d
Cir. 2004).  In New York, choice-of-law determinations are made on an issue-by-
issue basis.  See, e.g., Crown Cork & Seal Co., Inc. Master Ret. Trust v. Credit
Suisse First Boston Corp., Nos. 12–cv–05803–JLG, 12–cv–05804–JLG, 12–cv–
05805–JLG, 12–cv–07263–JLG, 12–cv–07264–JLG, 2013 WL 308889, at *2
(S.D.N.Y. Jan. 25, 2013); Globe Commc'ns Corp. v. R.C.S. Rizzoli Periodici, S.p.A.,
729 F. Supp. 973, 975 (S.D.N.Y. 1990) ("Choice of law questions are decided issue by
issue.").

---

[8] COC argues that defendants, through their briefing on personal jurisdiction and transfer of venue,
have conceded and admitted that California law shall govern.  (Pl.'s Br. at 5.)  This is essentially a
waiver argument.  While that argument carries some weight, there has been no showing that there
was any difference between the laws of New York and California on those points and therefore that
adoption of one over the other implicitly conceded facts relevant to the choice of law analysis.
Accordingly, this Court proceeds to the legal determination of the appropriate law to apply on this
particular motion.

Determining which state's law applies is a two-step process.  First, the Court must "determine whether there is an actual conflict between the laws of the jurisdictions involved."  <u>Licci ex rel. Licci v. Lebanese Canadian Bank, SAL</u>, 672 F.3d 155, 157 (2d Cir. 2012) (quoting <u>Wall v. CSX Transp., Inc.</u>, 471 F.3d 410, 415 (2d Cir. 2006)).  An actual conflict exists if the applicable law from each jurisdiction provides different substantive rules, and the differences are relevant to the issue at hand and have a significant possible effect on the outcome.  <u>Fin. One Pub. Co. v. Lehman Bros. Special Fin., Inc.</u>, 414 F.3d 325, 331 (2d Cir. 2005).  "If no actual conflict exists, and if New York is among the relevant jurisdictions, the court may simply apply New York law."  <u>Licci</u>, 672 F.3d at 157.  "If, however, there is an actual conflict, the Court must look to which jurisdiction has the greater interest in having its law applied to the dispute."  <u>Niv v. Hilton Hotels Corp.</u>, 710 F. Supp. 2d 328, 346 (S.D.N.Y. 2008) (citing <u>Padula v. Lilarn Props. Corp.</u>, 84 N.Y.2d 519, 521-22 (1994)). "If conflicting conduct-regulating laws are at issue, the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders."  <u>Brink's Ltd. v. S. African Airways</u>, 93 F.3d 1022, 1031 (2d Cir. 1996) (quoting <u>Cooney v. Osgood Machinery, Inc.</u>, 81 N.Y.2d 66, 72 (N.Y. 1993)).

Here, there is no actual conflict between the laws of New York and California regarding the elements of civil conspiracy: "(1) an agreement to participate in an unlawful act or a lawful act in an unlawful means; (2) an overt act performed in furtherance of the scheme; and (3) an injury caused by the overt act."  <u>In re Methyl</u>

Tertiary Butyl Ether ("MBTE") Prods. Liab. Litig., 175 F. Supp. 2d 593, 633 (S.D.N.Y. 2001); compare, e.g., Bigio v. Coca-Cola Co., 675 F.3d 163, 176 (2d Cir. 2012) (reciting requirements for civil conspiracy under New York law), with Young v. Hamilton, 92 Fed. App'x 389, 393 (9th Cir. 2003) (reciting requirements for civil conspiracy under California law).  Accordingly, the Court applies New York law to COC's civil conspiracy claim.

The choice of law for COC's fraud/misrepresentation claim is a thornier issue. As COC's Second Amended Complaint does not specify whether COC seeks relief for ordinary fraudulent misrepresentation or negligent misrepresentation (see SAC ¶¶ 73-78), and as COC argues that it may recover on its fraud/misrepresentation claim under either theory (see ECF No. 245 ("Pl.'s Br.") at 6-7 n.4), the Court must assess whether there is a conflict between New York and California law as to both.

The elements of a cause of action for fraudulent misrepresentation under New York law and California law are essentially the same.  Compare, e.g., Newman v. Family Mgmt. Corp., 530 Fed. App'x 21, 24 (2d Cir. 2013) (summary order) (to establish a claim for fraudulent misrepresentation under New York law, a plaintiff must show that "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance" (quoting Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 186-87 (2d Cir. 2004))), with Ajetunmobi v. Clarion Mortg. Capital, Inc., No. 12–56523, 2014 WL 7004834 (9th Cir. Dec. 12, 2014) ("A claim of

fraudulent misrepresentation in California requires 'a false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages.' (quoting <u>Vess v. Ciba–Geigy Corp. USA</u>, 317 F.3d 1097, 1105 (9th Cir. 2003))).

However, under New York law, a viable claim of fraud concerning a contract generally must allege a "misrepresentation of present facts," rather than a "misrepresentation of future intent to perform."[9]  <u>Magnuson v. Newman</u>, No. 10 Civ. 6211(JMF), 2013 WL 5380387, at *12 (quoting <u>MBIA Ins. Corp. v. Countrywide Home Loans, Inc.</u>, 928 N.Y.S.2d 229, 233 (N.Y. App. Div. 2011)).  In contrast, California law recognizes a cause of action for fraud concerning a contract based on a false promise of future intent.  <u>See, e.g.</u>, <u>Lazar v. Superior Court</u>, 909 P.2d 981, 985 (Cal. 1996) ("A promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud.").

New York and California law thus conflict with regard to whether a false promise of future intent can serve as a basis for a fraud/misrepresentation claim. This conflict could have a significant possible effect on the outcome of this case, as COC's fraud/misrepresentation claim is based on a false promise of future intent— specifically, CCF's and Mr. Christian's promise to perform under the Dealership Agreement.  Accordingly, with respect to COC's fraud/misrepresentation claim, it is necessary to "look to which jurisdiction has the greater interest in having its law applied to the dispute."  <u>Niv</u>, 710 F. Supp. 2d at 346.

---

[9] The circumstances under which New York law permits a misrepresentation of future intent to perform to serve as a basis for a fraud/misrepresentation claim are discussed in further detail below.

New York has at least equally as strong an interest in having its law applied to the dispute as California.  First, COC alleges that it was injured by defendants because defendants stole the Zaragoza Project, which concerned a home in Texas, and because defendants did not support COC's business operations in California. COC's alleged injuries thus occurred in California and Texas.  However, although COC may have suffered an injury to its business in California, the ultimate financial impact of this injury would flow to Colorado, where COC is incorporated and has its corporate headquarters.  Second, there is no evidence that defendants' allegedly wrongful <u>conduct</u> occurred in California itself, given that defendants' business operations are centered in New York and England, and the home that is the subject of the Zaragoza Project is located in Texas.[10]  Therefore, because defendants' business operations are largely centered in New York, and because neither the ultimate impact of the alleged injuries nor the allegedly wrongful conduct occurred in California itself, New York has at least equally as strong an interest in California in having its law applied to COC's fraud/misrepresentation claim.  Accordingly, the Court will apply New York law in adjudicating this claim.

As COC argues that its fraud/misrepresentation claim permits it to recover for either intentional or negligent misrepresentation, the Court must also for the sake of completeness examine whether there is a conflict between New York and

---

[10] The fact that defendants' alleged co-conspirators McCuaig, Lloyd, and Durgin reside in California may be relevant to the choice-of-law determination for COC's civil conspiracy claim, but it is irrelevant to COC's fraud/misrepresentation claim, because for the purposes of this claim the only misstatements or misrepresentations that are relevant are those by Mr. Christian, CCF, and CCNY (that is, COC's fraud/misrepresentation claim does not implicate statements by McCuaig, Lloyd, or Durgin), and under New York law the choice-of-law analysis is performed on an issue-by-issue basis. <u>See</u> <u>Crown Cork & Seal</u>, 2013 WL 308889, at *2; <u>Globe Commc'ns Corp.</u>, 729 F. Supp. at 975.

California law as to the requirements of a claim for negligent misrepresentation.  As a threshold matter, the Court notes that COC's complaint does not allege negligence or a breach of duty, as is necessary under New York law for a negligent misrepresentation claim.  (See SAC ¶¶ 73-78.)  "Under New York law, the elements for a negligent misrepresentation claim are that (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment." Hydro Investors, Inc. v. Trafalgar Power Inc., 227 F.3d 8, 20 (2d Cir. 2000).  With regard to element (1), an individual may have a "special relationship" with the allegedly injured party due to "unique or specialized expertise," or "a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified." Kimmell v. Schaefer, 89 N.Y.2d 257 (N.Y. 1996).

By comparison, under California law, the tort of negligent misrepresentation requires a plaintiff to establish justifiable reliance resulting in damages based on: (1) "the suggestion, as a fact, of that which is not true, by one who does not believe it to be true"; (2) "the assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true"; (3) "the suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely

to mislead for want of communication of that fact"; or (4) "a promise, made without

any intention of performing it."  Cal Civ. Code § 1710; <u>Small v. Fritz Cos.</u>, 65 P.3d

1255, 1258 (Cal. 2003).  There is therefore an actual conflict between the laws of

New York and California with regard to the requirements for establishing a claim of

negligent misrepresentation: New York requires a duty arising from a special

relationship, whereas California does not, and California law embodies an arguably

broader view of what constitutes a misstatement.  These differences could have a

significant possible effect on the outcome in this case.  Accordingly, the Court must

analyze whether New York or California has the greater interest in having its law

of negligent misrepresentation applied to this dispute.  Under the same logic as that

detailed above for COC's intentional fraud/misrepresentation claim, New York has

at least equally as strong an interest in having its law apply to this claim as

California.

In sum, the Court applies New York law to COC's fraud/misrepresentation

and civil conspiracy claims.

B.    <u>Legal Standards</u>

1.    <u>Summary judgment.</u>

Summary judgment may not be granted unless the movant shows, based on

admissible evidence in the record placed before the court, "that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter

of law."  Fed. R. Civ. P. 56(a).  The moving party bears the burden of demonstrating

"the absence of a genuine issue of material fact."  <u>Celotex Corp. v. Catrett</u>, 477 U.S.

317, 323 (1986).  When the moving party does not bear the ultimate burden on a

particular claim or issue, it need only make a showing that the non-moving party lacks evidence from which a reasonable jury could find in the non-moving party's favor at trial.  Id. at 322-23.  In making a determination on summary judgment, the Court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor."  Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010).

Once the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must set out specific facts showing a genuine issue of material fact for trial.  Price v. Cushman & Wakefield, Inc., 808 F. Supp. 2d 670, 685 (S.D.N.Y. 2011); see also Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist."  Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (citations omitted); see also Price, 808 F. Supp. 2d at 685 ("In seeking to show that there is a genuine issue of material fact for trial, the non-moving party cannot rely on mere allegations, denials, conjectures or conclusory statements, but must present affirmative and specific evidence showing that there is a genuine issue for trial.").

Only disputes relating to material facts—"facts that might affect the outcome of the suit under the governing law"—will properly preclude the entry of summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also

<u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986) (the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts").

    C.    <u>Fraud/misrepresentation.</u>

Under New York law, a misrepresentation of future intent to perform forms the basis of a breach of contract claim, whereas "a misrepresentation of present facts is collateral to the contract and therefore involves a separate breach of duty." <u>Magnuson</u>, 2013 WL 5380387 at *12 (quoting <u>MBIA Ins. Corp. v. Countrywide Home Loans, Inc.</u>, 928 N.Y.S.2d 229, 233 (N.Y. App. Div. 2011)).  "To maintain a fraud claim based on intentionally-false statements indicating an intent to perform under a contract, 'a plaintiff must either: (i) demonstrate a legal duty separate from the duty to perform under the contract . . . ; (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract . . . ; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages . . . .'" <u>Miller v. Holtzbrinck Publishers, L.L.C.</u>, 377 Fed. App'x 72, 74 (2d Cir. 2010) (alterations in original) (quoting <u>Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.</u>, 98 F.3d 13, 20 (2d Cir. 1996)).

COC's fourth claim for fraud/misrepresentation alleges that in order to induce COC to enter into the Dealership Agreement and to induce COC to expend substantial amounts of money marketing and expanding its business, CCF and Mr. Christian told COC that it would have the exclusive rights to market and sell Clive Christian furniture in California, even though at the time they knew or should have known that statement to be false.  COC also alleges that CCF and Mr. Christian

stated that under CCF's policies and procedures CCF and its dealers did not

cannibalize each other's sales.  COC's fraud/misrepresentation claim is therefore

based on allegedly intentionally-false statements indicating an intent to perform.

For this claim to be viable, COC must establish a legal duty separate from the duty

to perform under the Dealership Agreement, or a fraudulent misrepresentation

collateral or extraneous to the Dealership Agreement, or special damages caused by

the misrepresentation that are unrecoverable under its breach of contract claim.

But there is no triable issue as to any.

First, there is no triable issue as to whether Mr. Christian, CCF, or CCNY

had any legal duty to COC separate from a duty to perform under the Dealership

Agreement.  Indeed, in its fraud/misrepresentation claim, COC does not plead that

defendants had any such duty (indeed, the word "duty" does not even appear in the

Second Amended Complaint).  (See SAC ¶¶ 73-38.)  Although COC argues that CCF

maintained policies and procedures relating to Clive Christian–brand dealers

supporting each other and not stealing each other's clients, this policy is internal to

CCF and provides no basis for a binding legal obligation to COC.  See de

Kwiatkowski v. Bear, Stearns & Co., 306 F.3d 1293, 1311 (2d Cir. 2002) (courts

have "declined to infer legal duties from internal 'house rules' or industry norms");

Ross v. City of New York, No. 12 Civ. 08545(LGS), 2014 WL 3844783, at *6

(S.D.N.Y. Aug. 4, 2014) (internal guidelines and policy rules do not give rise to legal

duties).  In addition, COC asserts such policies and procedures as a basis for its

breach of contract claim (see SAC ¶ 58), which leads to the implication that even if

these policies and procedures are the source of a binding legal duty, this duty is not separate from the Dealership Agreement.

COC further argues that defendants have implicitly conceded that Mr. Christian is not a party to the Dealership Agreement, and that if this is so, COC's fraud/misrepresentation claim cannot be duplicative of a breach of contract claim. This arguments fails.  Even if one accepts, _arguendo_, that Mr. Christian is not a party to the Dealership Agreement, this would signify only that Mr. Christian lacks a legal duty to COC under that agreement—that is, Mr. Christian's not being a party to the Dealership Agreement does not, by itself, suggest that he owed any legal duty to COC.  As a matter of law, there is no separate legal duty distinct from that under the Dealership Agreement supporting COC's fraud/misrepresentation claim.  See Dillon v. United States, No. 10-CV-6112T, 2012 WL 2923357, at *3 (W.D.N.Y. 2012) ("Generally, a contractual obligation between two parties does not create a legal duty between a party to the contract and a person not a party to the contract."  (citing Church ex rel. Smith v. Callanan Indus., Inc., 99 N.Y.2d 104, 110-11 (N.Y. 2002)); Lanaro v. Bosman, 696 N.Y.S.2d 552, 554 (N.Y. App. Div. 1999) (non-party to a contract does not owe legal duty to party to contract absent evidence of a legal duty independent of the contract).

Even apart from this, there is no triable issue as to whether there was a fraudulent misrepresentation by defendants that was collateral or extraneous to the Dealership Agreement.  COC's fraud/misrepresentation claim is based on allegations that defendants fraudulently misrepresented that COC would have the

exclusive right to the California territory for 21 years under the Dealership Agreement itself.

Finally, and separate from the foregoing bases for dismissal, there is no triable issue as to whether COC can establish a fraud/misrepresentation claim based on special damages it suffered as a result of a misrepresentation by defendants and that are unrecoverable under its breach of contract claim.  COC argues that special damages resulted from breaching the lease on its Beverly Hills showroom.  (Pl.'s Br. at 14-15.)  However, plaintiff seeks the very same damages under its breach of contract claim.  (See SAC ¶ 63 ("As a direct result of CCF and Mr. Christian's breaches of contract, COC has been harmed in that it . . . [sustained] damages related to the breach of lease occasioned by COC being forced out of business.").)[11]

Accordingly, there is no triable issue as to COC's claim for fraud/misrepresentation, and the Court GRANTS summary judgment for defendants as to this claim.

    D.    <u>Civil conspiracy.</u>

"To state a claim for civil conspiracy under New York law, a plaintiff, in addition to alleging an underlying tort, must plead facts sufficient to support an inference of the following elements: "'(1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional

---

[11] Additionally, plaintiff has not sufficiently plead the elements of a cause of action for negligent misrepresentation under New York law.

participation in the furtherance of a plan or purpose; and (4) resulting damage or injury.'" <u>Bigio</u>, 675 F.3d at 176 (quoting <u>Abacus</u>, 905 N.Y.S.2d at 588).

"Under the intracorporate conspiracy doctrine, the officers, agents, and employees of a single corporate entity, each acting within the scope of [his] employment, are legally incapable of conspiring together." <u>Reich v. Lopez</u>, No. 13–CV–5307 (JPO), 2014 WL 4067179, at *20 (S.D.N.Y. Aug. 18, 2014) (quoting <u>Little v. City of New York</u>, 487 F. Supp. 2d 426, 441-42 (S.D.N.Y. 2007)).  "The exception to this doctrine 'applies where a plaintiff adequately alleges that each defendant possessed an independent, personal conspiratorial purpose, wholly separate and apart from the entity.'" <u>Id.</u> (quoting <u>Broich v. Inc. Vill. of Southampton</u>, 650 F. Supp. 2d 234, 247 (E.D.N.Y. 2009)).  "[D]istrict courts in this Circuit have . . . applied the intracorporate conspiracy doctrine to state law conspiracy claims on numerous occasions." <u>Id.</u> (collecting cases).  "[T]here is no reason not to apply the doctrine to New York state conspiracy claims as it is rooted in the New York state common law." <u>Id.</u> (citing <u>Bereswill v. Yablon</u>, 6 N.Y.2d 301, 305 (1959)).

Even assuming, <u>arguendo</u>, that defendants have committed an underlying tort,[12] there is no triable issue as to COC's civil conspiracy claim.  COC bases its conspiracy agreement on the claim that Durgin, McCuaig, Lloyd, and each of the defendants conspired to interfere with COC's ongoing business relationship with LMC Design Group and the owners of the Zaragoza Project.  Defendants, however, are all in the same corporate family, as they are all affiliates or members of Clive

---

[12] Although, as established above, there is no triable issue as to COC's fraud/misrepresentation claim, COC's first claim for relief for tortious interference with prospective business advantage remains live.

Christian plc: Mr. Christian is Chairman of Clive Christian plc; Clive Christian plc wholly owns CCF; and CCNY was 99.5% owned by Clive Christian plc at the time of the alleged conspiracy.  (DSOF ¶¶ 19-22.)  Accordingly, under the intracorporate conspiracy doctrine, defendants cannot conspire with each other as a matter of law—they can only conspire with individuals outside of the Clive Christian plc corporate family, such as McCuaig, Durgin, and Lloyd.  Further, because McCuaig decided not purchase cabinetry and fitted furniture from COC on December 20 or 21, 2011, only communications between defendants and Durgin, McCuaig, or Lloyd prior to then are relevant.  Yet the record reflects only two such communications: in late November or early December 2011, Lloyd and Mr. Christian spoke about the Zaragoza Project; and on December 14, 2011, Weeman sent Lloyd a text message.  The mere fact that there were two isolated communications between defendants and their alleged co-conspirators prior to the date on which COC claims its sale was unlawfully stolen is insufficient to create a triable issue as to whether a civil conspiracy existed.

Further, to constitute a civil conspiracy, each of the defendants must have had an independent, personal conspiratorial purpose, but there is no factual support raising a triable issue as to whether Mr. Christian, the only defendant who is a living person, had an independent, personal conspiratorial purpose, wholly separate and apart from his business interests in CCF and CCNY.  Whatever benefits he would have gained from the transfer of the Zaragoza Project away from COC would have accrued to him through financial benefits to his businesses.

Additionally, there is also no triable issue as to whether there was an agreement among defendants, McCuaig, Lloyd, and Durgin to engage in the alleged conspiracy, or any overt act in furtherance of such a conspiracy.  First, COC's civil conspiracy claim is largely based on statements by COC employee Richard DeLesk.  DeLesk's statements are speculative, not supported by personal knowledge, and inadmissible.  (E.g., ECF No. 237 at 10:13-11:15).  DeLesk's statements cannot establish a triable issue.

In the absence of a triable issue on these elements, summary judgment is appropriate.

IV.    CONCLUSION

For the above reasons, plaintiff's motion to strike is DENIED and defendants' motion for summary judgment is GRANTED.

The Clerk of Court is directed to close the motions at ECF Nos. 233 and 250.

SO ORDERED.

Dated:       New York, New York
             February 3, 2015

_____
        KATHERINE B. FORREST
        United States District Judge